## In re ELECTRIC RATES FOR CONDOMINIUM AND COOPERATIVE APARTMENTS
No. 7697-EU.

Florida Public Service Commission.
September 26, 1966.

William C. Steel, Phillip Goldman and James H. Sweeny, III, of Scott, McCarthy, Preston & Steel, Miami, for Florida Power & Light Co.

Stanley A. Brandimore, St. Petersburg, for Florida Power Corporation.

Wallace W. Kennedy and Bert Lane, both of Pensacola, for Gulf Power Co.

John R. Lawson, Jr., Tampa, for Tampa Electric Co.

Louis W. Adams, Fort Lauderdale, for Florida Cooperative Apartment Owners Ass'n.

George J. Alboum, Miami Beach, for North Shore Apartment House Ass'n.

Richard G. Gordon of Saunders, Curtis, Ginestra & Gore, Fort Lauderdale, for Committee for Action.

Thomas F. Woods, Tallahassee, for Florida Cooperative Apartment Owners Ass'n.

B. Kenneth Gatlin, Assistant General Counsel, for the commission's general staff and the public generally.

Edward J. Downey, Treasurer, for Florida Public Utilities Co.; W. C. Mansfield for Colonial Gardens; Julius A. Negin for Marlborough House, Inc.; John T. Wulff for Suburbanite Square I; Ben Roman for Terrace Towers; Mrs. Doris Orlow for Terrace East, Inc.; Mrs. Letha Ruse for Sunshine Villa; David Lutterman for Haven Apartments; J. M. Kramer for Ocean Towers, Inc.; Peter Romano for Monroe Garden Apartments; Jack Cohen for Rowland Lake Garden Apartments; Charles R. Warren for Venetian Park, Inc.; Barney Simmons for Suburbanite Cooperative Apartments; R. E. Olson for Regency House, Inc.; Mrs. Lynne Radner for Little River Cooperative Apartments, Inc.; George Crawford for Arvida Corporation; Mrs. Marie Aird for LaFontana Apartments; Albert H. Jorgenson for Lighthouse Colony Apartments; Francis G. Joly for Hallandale Cooperative and Condominium Ass'n.; and Herman Schwartz for Seaedge, Inc.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILLIAM T. MAYO participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to appropriate notice the commission held public hearings in the City Commission Meeting Room, Municipal Justice Bldg., Miami, on April 15 and December 20, 1965, and April 29, 1966.

The entire record herein, including the exhibits and testimony adduced at the public hearings, have all been examined by the full commission. After due consideration, the commission now enters its order in this cause.

This cause was initiated pursuant to commission order no. 3705, docket no. 7697-EU, wherein the commission stated that it had received numerous complaints from customers residing in or associated with condominiums and cooperative apartment buildings because of the application by the electric utility companies of commercial or general service rate schedules to energy used in commonly-owned facilities in and around such buildings. As a result of the complaints, the commission's staff commenced an investigation into the problem and the commission ordered all the electric public utilities companies under its jurisdiction to show cause why all electric utility companies should not adopt the same policy and position as that of Tampa Electric in regard to cooperatives and condominiums in their service areas. As stated in the said order, the position of Tampa Electric was as follows —

Customers shall be billed on the residential rate if the following criteria are met —

(1) 100% of the energy is used exclusively for the co-owners' benefit.

(2) None of the energy is used in any endeavor which sells or rents a commodity or provides a service for a fee.

(3) Each point of delivery will be separately metered and billed.

(4) A responsible legal entity is established as the customer to whom the company can render its bills for said service.

The respondents, Florida Power Corporation, Florida Power and Light Company, Gulf Power, and Florida Public Utilities called as their first witness, Mr. Riley D. Woodson, who was qualified as an expert in the field of utility rates. Woodson conceded that he had no personal knowledge of the makeup of condominium or cooperative apartments and, in fact, had never been in one that was in operation. He testified that the residential rate should not be applied, primarily on the basis of tables contained in the Standard Handbook for Electrical Engineers, page 1381, table 14-31, ninth edition. On this authority, Mr. Woodson stated that the effect of a greater diversity factor for residential customers (which was presumed on the part of the witness) was that they require less power system capacity and an investment to serve them per kilowatt of each individual customer's demand, and therefore, rates are designed to take this characteristic into account. According to Woodson, the result of applying a residential rate to a "dissimilar class load having a lower diversity factor is that insufficient revenue *may* be received by the utility to pay all of the costs of the electric service."

Woodson further testified that the second major difference between residences or apartments comes from the relatively larger size different load factor for the electric service to commonly used facilities. According to Woodson, the investment cost factor is related to the local distribution and service facilities and administrative costs. In the case of residential customers, then it would be predominant.

The witness testified that the application of residential rates to the rate of service of commonly used facilities of condominiums and cooperatives would tend to be confiscatory, inasmuch as such application will not and cannot return to the utility the properly allocated cost of the electric service and thus tends to confiscate the property of the utility company. The witness testified that there should be no distinction made in application of electric rates because of the different forms of ownership or the operation of such buildings. Further, the only factor which should enter into either rate-making or rate-application are those factors which directly influence the cost of electric service to the customer.

On cross-examination, the witness responded in the affirmative when asked whether it was normal and proper that such electric service to condominiums and cooperatives be classified as commercial. When asked whether or not he was speaking from a

theoretical standpoint or a practical application as to the state of Florida, the witness responded —

"I am speaking of the proper principles, to my opinion, at least, and I think the generally accepted principle is that the only basic consideration is the cost of the service, not the ownership, not the form of the ownership."

The witness testified further that residential rates are designed around the composite average characteristics of all such customers and the various elements of cost of service are included in the rate structure accordingly. He was asked on cross-examination whether or not he was talking about a theoretical situation the way it ought to be, or whether he had examined the utility structure of the state of Florida and the way it is. The witness responded that he had never experienced a case where it was not done this way. However, when asked whether or not he had studied the rate structure set up by the Florida utility companies, he admitted that he had not examined the rate structure himself.

In summary, the main thrust of the witness's testimony was that a single residential unit, that is, one dwelling to one plot of ground, creates a factor of diversity which enables utility companies to furnish electric service at lower cost to single residential units than they could to the same number of units when contained in a multiple unit building. The basis of his opinion was founded on general principles of rate making and not on any practical or first-hand knowledge of the actual cost in serving cooperatives or condominiums in the state of Florida.

At the outset of the hearing, counsel for the Florida Cooperative Apartment Owners Association moved that a survey conducted by them be admitted into evidence pursuant to a stipulation with counsel for the electric power companies. The stipulation reserved the right for the power companies to offer rebuttal testimony in regard to the survey. The survey was admitted into evidence and showed that the vast majority of the cooperative and condominium apartment houses were strictly residential in character.

The intervening Florida Cooperative Apartment Owners Association called as their first witness Mr. George A. Koteen as an expert on utility rates. The power companies stipulated that Mr. Koteen was a qualified rate analyst and the examiner accepted his testimony as an expert in the field of electric rates.

Mr. Koteen testified that in his opinion, common use facilities in condominiums and cooperative residences should be rightfully billed under residential rates.

In explaining this answer, the witness testified that he had studied the testimony of the previous expert, Woodson, and found that Woodson's testimony was predicated mainly upon the cost to serve basis as it pertained to diversity of use. While Koteen conceded that the engineer's handbook on which Woodson relied is a recognized authority, he pointed out that this work dealt with generalities and does not necessarily reflect conditions in the case before the commission. Koteen took issue with the power companies' position that diversity of use should be the deciding factor in the case. The witness pointed out that the cost to serve would be the main issue on which the power companies objected, but that consideration should also be given the transmission, distribution, meter, meter-reading, billing and general administration costs. He further pointed out that the utilities had presented no evidence to show that their costs are higher in serving the common use facilities of condominium and cooperative residences. He further stated, using the rates of Florida Power and Light Company, that a condominium or cooperative being billed on the commercial rate using 1000 kilowatts per month would pay $39.50 for such use, whereas under the residential rates, the cost to the consumer would be $19.31.

The witness raised the question as to whether diversity of use is a factor to merit *doubling* the price to the consumer. Referring to the survey previously admitted into evidence Koteen pointed out the lack of commercial type operation in the condominium and cooperative apartments in question. He pointed out that one cannot positively state that twenty individual washer units, such as would be present in twenty single dwelling houses, would not operate simultaneously during one same 15-minute period per month which, he stated, was the demand period used by Florida Power and Light Company. The significance of this was that the twenty washing machines may operate simultaneously part of the month and then with greater diversity during the remainder of the month. However, because there is one period of simultaneous use, the diversity factor is negated and the utility must provide at a figurative load of KW per washer, 20 KW.

He further testified that the cumulative total hours use of electricity of the twenty machines may be twenty hours; therefore, the electricity sold during the month would be 400 Kwh at

an estimated average rate of $1.93 per KW. The Florida Power and Light Company would receive a revenue of $7.72. On the other hand, assuming the same total usage in a cooperative where one or two units are serving twenty apartments, the commercial service rate would be $15.80, double that for the residential rate.

The witness pointed out that this same calculation could be applied to any commonly used facility within the cooperative or condominium. Koteen then dealt with the question of the criteria set out in the commission's order no. 3705 which initiated the hearing. The first condition (100% of the energy is to be used exclusively for the co-owners' benefit) raised the question of subletting for short periods of time. The witness pointed out that subletting of individual residences during short periods of the year is probably more prevalent in Florida than in any other state in the union. In those cases, the utility companies do not bill the sub-tenant on commercial rates of service, nor is the lawyer, accountant, dressmaker or anyone who uses a portion of his home for intermittent commercial use billed on a commercial rate. Rather, it is the primary use of the power that is the determining test.

In summary, Koteen testified that, in his expert opinion, cooperative and condominium commonly used facilities should be placed on a residential rate basis.

The commission finds that cooperative and condominium apartments are, in the legal sense, residential in character. For example, owners of cooperative and condominium apartment buildings are entitled to homestead exemptions. Individual members of the condominium actually own their own apartments and a share in the commonly used facilities of the buildings. The cooperative member, under most arrangements, holds an interest in an entity which holds the title to the building for the benefit of the members living therein.

The ownership held by people residing in these types of apartments is residential in character. They should have the right to residential rates just as someone living in a single dwelling does. Otherwise they are being discriminated against. None of the rate-making theories in this record justifies such discrimination. The record does not reflect that their receiving electricity at residential rates would violate the principle upon which any of the present electric utility tariffs are based.

On the basis of the foregoing, the commission finds that those cooperative and condominium apartments that meet the criteria

set forth in the ordering paragraph below should be charged the residential rate. The first criterion set out in order no. 3705 has been modified since a majority of the owners of an apartment building should not be forced to pay the higher commercial rate because some of the individual units in the building have been rented. This criterion will allow the application of sound judgment in an individual case.

It is therefore ordered that the tariffs of all the electric utilities be amended so as to provide for the application of residential rates for energy used in commonly-owned facilities in condominium and cooperative apartment buildings, subject to the following criteria —

(1) The energy is used predominantly for the co-owners' benefit.

(2) None of the energy is used in any endeavor which sells or rents a commodity or provides service for a fee.

(3) Each point of delivery is separately metered and billed.

(4) A responsible legal entity is established as a customer to whom the company can render its bills for said service.

It is further ordered that the above tariff shall be effective on all billing on and subsequent to November 1, 1966.